IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

ANDRELL MOORE,                      :

    Plaintiff,                    :

vs.                                 :     CA 11-0008-C

MICHAEL J. ASTRUE,                  :
Commissioner of Social Security,
                                    :
    Defendant.


**MEMORANDUM OPINION AND ORDER**

    Plaintiff brings this action, pursuant to 42 U.S.C. § 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for supplemental security income benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 20 ("In accordance with provisions of 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings."); *see also* Doc. 22 (endorsed order of reference).) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of the parties at the November 17, 2011 hearing before the Magistrate Judge, it is determined that the Commissioner's decision

1

denying plaintiff benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[1]

Plaintiff alleges disability due to mild mental retardation, cephalgia, chronic obstructive pulmonary disease and sinusitis, and obesity. The Administrative Law Judge (ALJ) made the following relevant findings:

> 1. The claimant has not engaged in substantial gainful activity since March 3, 2009, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The claimant has the following severe impairments: borderline intellectual functioning, cephalgia, chronic obstructive pulmonary disease and sinusitis, and obesity. There is non-severe tobacco abuse and leg pain (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, for the reasons set forth below, nor is it so alleged (20 CFR 416.920(d), 416.925 and 416.926).
>
> . . .
>
> The claimant's mental impairment has been considered under the requirements of listing 12.05. Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning. The required level of severity for this disorder is met when the requirements in paragraphs A, B, C, or D are satisfied.
>
> . . .
>
> In terms of the requirements in paragraph C, they are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Doc. 20 ("An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

. . .

**4.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b)except that he must avoid concentrated exposure to environmental irritants such as fumes, odors, dusts, gases, and poorly ventilated areas. He is limited to the performance of simple, routine, and repetitive 1 to 2 step tasks in a low stress job, defined as having only occasional decision making and only occasional changes in the work setting. He is precluded from public interaction.**

. . .

The claimant testified that he cannot read at all, cannot add or subtract, and cannot complete a job application. This seems inconsistent with his work at the Dollar General Store, where he worked while in the twelfth grade.

. . .

The claimant filed his application for supplemental security income benefits on March 3, 2009. The evidence of record as it pertains to the relevant period at issue is sparse. The claimant underwent psychological testing in April of 2006 at which time mild mental retardation was estimated (Exhibit 1F). Administration of standardized psychological testing in May 2002 had revealed verbal, performance, and full scale IQ scores of 70, 72, and 68, respectively, with a diagnosis of mild mental retardation versus borderline intellectual functioning (Exhibit 2F).

. . .

From the mental perspective, the record reflects only mild mental retardation versus borderline intellectual functioning. While the claimant and his representative tried to represent the claimant []as illiterate, the claimant could and did write his name in block letters at the hearing. The undersigned noted that the claimant appeared to rock back and forth at the hearing, but only when the undersigned was looking. While this is sometimes a characteristic of a mentally retarded person, it is not mentioned in the evidence of record.

>The Regulations suggest that an illiterate person has had little or no formal schooling, yet the claimant could and did graduate from high school, albeit in special classes. Moreover, the record is completely devoid of any observation that the claimant was illiterate or that he demonstrated the rocking behavior observed during the hearing. Given the number of IQ tests and psychological examinations the claimant has received, one would logically expect such an observation would be made if the claimant were indeed illiterate. That said, I still queried the vocational expert as to whether being illiterate or limiting the potential work to jobs without complex verbal or written communication would have any impact on the job base he provided for the hypothetical related to the residual functional capacity. The vocational expert said it would not.
>
>**5.     The claimant has no past relevant work (20 CFR 416.965).**
>
>**6.     The claimant was born on June 10, 1983 and was 25 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).**
>
>**7.     The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).**
>
>**8.     Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).**
>
>**9.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969[]a[]).**
>
>.    .    .
>
>**10.    The claimant has not been under a disability, as defined in the Social Security Act, since March 3, 2009, the date the application was filed (20 CFR 416.920(g)).**

(Tr. 14, 15, 16, 17, 17-18, & 19.)  The Appeals Council affirmed the ALJ's decision (Tr. 1-3) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

4

## DISCUSSION

In supplemental security income cases where the claimant has no past vocationally-relevant work, as here, it is the Commissioner's burden to prove that the claimant is capable of performing work which exists in significant numbers in the national economy. *See Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989) (citation omitted). The ALJ's articulation of specific jobs the claimant is capable of performing must be supported by substantial evidence. *Id.* (citation omitted). Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[2]

In this case, the plaintiff contends that the ALJ: (1) erred in failing to find him presumptively disabled under Listing 12.05C; and (2) erred in finding his severe mental impairment to be borderline intellectual functioning. In addition, plaintiff contends that the Appeals Council erred in failing to remand the case to the ALJ to consider Dr. Blanton's cognitive evaluation. Because the undersigned agrees with the plaintiff that the ALJ improperly evaluated his impairments in the context of Listing 12.05C, there is no need to address at length the other assignments of error raised by Moore. *Cf. Pendley*

---

[2] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

*v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert's testimony alone warrants a reversal,' we do not consider the appellant's other claims.").

In this circuit, Moore must bear the burden of proving that he has an impairment which meets or is medically equivalent to a listed impairment. *Bell v. Bowen*, 796 F.2d 1350, 1353 (11th Cir. 1986) ("We hold that when a claimant contends that he has an impairment meeting the listed impairments entitling him to an adjudication of disability under regulation 404.1520(d), he must present specific medical findings that meet the various tests listed under the description of the applicable impairment or, if in the alternative he contends that he has an impairment which is equal to one of the listed impairments, the claimant must present medical evidence which describes how the impairment has such an equivalency."); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) ("To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. . . . To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'"). To establish presumptive disability under § 12.05C, a claimant must present evidence of "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C. In addition, while plaintiff must "also satisfy the 'diagnostic description' of mental retardation in Listing

6

12.05[,]"³ *Cooper v. Commissioner of Social Security*, 217 Fed.Appx. 450, 452, 2007 WL 543059, *1 (6th Cir. Feb. 15, 2007), citing *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001), the law in this circuit is clear that where, as here, a claimant has presented a valid IQ score of 60 to 70, he is entitled to the presumption that he manifested deficits in adaptive functioning before the age of 22, *Hodges v. Barnhart*, 276 F.3d 1265, 1266 & 1268-1269 (11th Cir. 2001).⁴ The only mention the ALJ makes of Listing 12.05C in his opinion is the conclusory one that "the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." (Tr. 15.) Beyond the observation that the ALJ's finding in this regard is conclusory, the Court also finds that it is not supported by the evidence of record. Indeed, the record reflects that plaintiff has produced evidence of a valid verbal, performance and full scale IQ of 60 through 70 (*compare* Tr. 161 ("Andrell obtained a Verbal IQ of 70 (2nd percentile) and Performance IQ of 72 (3rd percentile), yielding a Full Scale IQ of 68 (2nd percentile), placing him in the mild mental retardation range of overall intellectual functioning. . . . Andrell appeared to put forth good effort during

---

³ "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. "'Adaptive functioning' refers to a person's ability to perform activities of daily living and social functioning." *Fischer v. Barnhart*, 129 Fed.Appx. 297, 301-302, 2005 WL 352451, *4 (7th Cir. Feb. 11, 2005) (citation omitted).

⁴ This presumption is rebuttable, the Commissioner being charged with the task of determining whether there is sufficient evidence (relating to plaintiff's daily life) to rebut the presumption. *Grant v. Astrue*, 255 Fed.Appx. 374, 375 (11th Cir. Nov. 13, 2007).

testing and these results are considered an accurate estimate of his current intellectual functioning, which appears consistent with reported history.") *with, e.g.,* Tr. 174 (on the WISC-III given on May 16, 1996, Moore achieved a verbal IQ score of 72, a performance IQ score of 58, and a full scale IQ score of 62; on the WISC-R given on May 16, 1993, Moore achieved a verbal IQ score of 79, a performance IQ score of 68, and a full scale IQ score of 71; and on the WISC-R given on May 16, 1990, Moore achieved a verbal IQ score of 75, a performance IQ score of 58, and a full scale IQ score of 65); *see* Tr. 223 & 224 (administration of the WAIS-IV revealed a valid full scale IQ score of 55)), as well as evidence of other physical impairments which impose significant work-related limitations of function (*compare* Tr. 14 ("**The claimant has the following severe impairments: . . . cephalgia, chronic obstructive pulmonary disease and sinusitis, and obesity.**") *with* Tr. 16 ("**After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b)except that he must avoid concentrated exposure to environmental irritants such as fumes, odors, dusts, gases, and poorly ventilated areas.**")). What this Court cannot determine is whether the evidence satisfies the diagnostic description of mental retardation since the ALJ did not engage in such analysis.[5] This was error which requires remand of this action to the Commissioner of Social Security for further consideration.[6]

---

[5]  This Court cannot engage in the analysis the defendant suggests in its brief (*see* Doc. 23, at 6-9); rather, this is exactly the type of analysis that must be performed by the ALJ on remand particularly since the ALJ recognized in his conclusory analysis that this is a presumptive disability case (*see* Tr. 14-15). In other words, it was the ALJ's responsibility, not
(Continued)

**CONCLUSION**

It is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g),[7] see *Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 29th day of November, 2011.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

---

the duty of this Court, to discuss and address all the evidence relating to the issue of deficits of adaptive functioning (that is, evidence relating to plaintiff's daily life, including social functioning). Therefore, plaintiff is entitled to the presumption outlined in *Hodges* and the burden falls to the Commissioner to either find plaintiff presumptively disabled or rebut the presumption.

[6] Given the ALJ's failure to engage in the type of analysis Listing 12.05C contemplates, the Court is confounded by the finding that plaintiff's severe mental impairment is borderline intellectual functioning since no one who evaluated plaintiff has provided that particular diagnosis.

[7] Although the plaintiff's application in this case is solely for supplemental security income benefits pursuant to 42 U.S.C. § 1383(c)(3), remand is proper under sentence four of § 405(g) because § 1383(c)(3) provides that "[t]he final decision of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."